IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SEAN HARRISON, Individually and on
Behalf of Others Similarly Situated                                         **PLAINTIFF**

V.                              CASE NO. 5:19-CV-05025

HOG TAXI, LLC; MELISSA REYNOLDS;
AND TIMOTHY REYNOLDS                                                        **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff's Motion for Conditional Certification of Collective Action, for Disclosure of Contact Information, and to Send Notices (Doc. 35) and Brief in Support (Doc. 36); Defendants' Response in Opposition (Doc. 37); and Plaintiff's Reply (Doc. 40). As explained in this Order, Plaintiff's Motion (Doc. 35) is **GRANTED**.

### I. BACKGROUND

Plaintiff Sean Harrison, on behalf of himself and others similarly situated, moves the Court for conditional certification of a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). The FLSA is a federal statute governing minimum wages, maximum hours worked, and overtime compensation. The statute allows an action to be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). This type of lawsuit requires that each potential plaintiff "opt in," or "give his consent in writing to become such a party" to a collective claim for unpaid wages. *Id.*

Mr. Harrison is a former driver for Hog Taxi, LLC, a taxi company in northwest Arkansas. Mr. Harrison alleges that Defendants violated the FLSA by failing to pay the drivers minimum wage for up to forty hours of work per week. Mr. Harrison asks the Court

to conditionally certify an FLSA class of "all taxi drivers who were employed by Defendants at any time since February 7, 2016." (Doc. 35-1).[1]

In the Motion, Mr. Harrison argues that Defendants' practice of paying a commission per ride without regard to the number of hours worked and taking deductions for phone, dispatch, and leasing fees resulted in a failure to pay the minimum wage. Mr. Harrison submits that all the taxi drivers working for Defendants are paid according to the same policy.

Defendants do not dispute Mr. Harrison's description of the compensation policy but assert that Mr. Harrison has not established that practice to be unlawful. Defendants also raise the objection that Mr. Harrison fails to show that other plaintiffs desire to opt in to the litigation should conditional certification be granted. Finally, in raising various objections to the proposed form of notice, Defendants object to the inclusion in the conditional class of drivers who own their own cars. They also object to Plaintiff's characterization of the class as drivers who were "employed by" Defendants. *Id.* Defendants note that the employment status of the taxi drivers is disputed and argue that the definition of the class should therefore be revised to use more neutral language.

If conditional certification is granted, Mr. Harrison wishes to send out notice to potential opt-in plaintiffs by U.S. Mail, followed by a reminder postcard after 30 days. Mr. Harrison also wishes to send notification by email and allow opt-in plaintiffs to submit their consent online via RightSignature.com.

---

[1] There is a discrepancy between the class definition in Plaintiff's Motion (Doc. 35) and the one used in the proposed Notice (Doc. 35-1). Since, as explained below, the Court finds that a broad class definition is appropriate at this stage of the litigation, this is the proposed definition to which the Court will refer.

Defendants make several objections to Mr. Harrison's proposed notice. A few of these are accepted by Mr. Harrison in Plaintiff's Reply in Support of Plaintiff's Motion for Conditional Certification (Doc. 40). Mr. Harrison accepts the proposal that the scheduled trial date be included in the description of the lawsuit. If email notification is granted by the Court, Mr. Harrison also accepts Defendants' proposed changes to the electronic notice and consent emails.

A few objections remain unresolved. Defendants object to language in paragraph 3 of the proposed Notice (Doc. 35-1) referring to the potential for the case to be settled. Defendants further object to language in paragraph 6 of the proposed Notice informing potential opt-in plaintiffs that they "will not be required to pay attorney's fees directly." *Id.* Defendants argue that this language is misleading because the Court has the discretion under Federal Rule of Civil Procedure 54(d)(1) to award costs to Defendants if they are the prevailing party and because Plaintiff's counsel can seek a percentage of the fund following a settlement, which could result in opt-in plaintiffs not being made completely whole.

## II. CONDITIONAL CERTIFICATION

### A. Legal Standard

The Eighth Circuit has not yet announced standards that district courts must use in evaluating collective actions pursuant to the FLSA. *Resendiz-Ramirez v. P&H Forestry, LLC*, 515 F. Supp. 2d 937, 940 (W.D. Ark. 2007). In the absence of such guidance, numerous district courts in this Circuit, including this Court, have approved of the procedures announced in the Fifth Circuit case of *Mooney v. Aramco Services Co.*, which establishes a two-step process for certifying a collective action. 4 F.3d 1207, 1212

(5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *Aaron v. Summit Health and Rehab., LLC*, 2014 WL 1095829, at *2 (W.D. Ark. Mar. 19, 2014) (citing *Mooney* for the prevailing approach used by federal courts in certifying collective actions); *Garrison v. ConAgra Packaged Foods, LLC*, 2013 WL 1247649, at *1 (E.D. Ark. Mar. 27, 2013) (same); *Shackleford v. Cargill Meat Solutions Corp.*, 2013 WL 209052, at *1 (W.D. Mo. Jan. 17, 2013) (same); *Burch v. Qwest Commc'ns Int'l, Inc.*, 677 F. Supp. 2d 1101, 1114 (D. Minn. 2009) (same).

The two-step process described in *Mooney* involves a progressively more rigorous analysis as to whether a putative class of plaintiffs is "similarly situated," as described in § 216(b) of the FLSA, and is thus suited for the collective action model as a means of efficiently litigating their claims. *Mooney* labels the first step in the inquiry as the "notice stage" and the second step as the "decertification stage," as follows:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.
>
> Because the Court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims.

54 F.3d at 1213-14.

Plaintiff's Motion for Conditional Certification now comes before the Court at the preliminary "notice stage." Accordingly, the Court is tasked with the job of identifying whether, prior to taking discovery in the case and after considering only the pleadings and affidavits, conditional certification of a class of similarly situated employees is appropriate. Courts have acknowledged that "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees . . . ." *Id.* At the notice stage, a plaintiff must only make "a modest factual showing sufficient to demonstrate that she and potential plaintiffs together were victims of a common policy or plan that violated the law." *Garrison*, 2013 WL 1247649, at *2. While the burden of proof borne by the plaintiffs at this stage is relatively low, "some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency." *Jost v. Commonwealth Land Title Ins. Co.*, 2009 WL 211943, at *2 (E.D. Mo. Jan. 27, 2009) (quoting *Barron v. Henry Cnty. Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003)).

The inquiry is made somewhat complicated by the fact that the term "similarly situated" is not defined in the FLSA. District courts in this Circuit have therefore considered a variety of factors—no single one of which is dispositive—in determining whether plaintiffs and proposed class members are similarly situated at the notice stage, including: (1) whether they hold the same job title; (2) whether they work or worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether they were subjected to the same policies and practices established in the same manner by the same decision-maker; and (5) the extent to which the acts constituting the alleged violations are similar. *Watson v. Surf-Frac Wellhead*

*Equip. Co., Inc.*, 2012 WL 5185869, at *1 (E.D. Ark. Oct. 18, 2012) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086 (11th Cir. 1996)).

## A. Discussion

Having reviewed Plaintiff's Motion in light of the relevant standards and applicable factors, the Court finds that he has met his burden of demonstrating that he is similarly situated to a potential class of taxi drivers working for Hog Taxi, LLC. The drivers hold the same job title, work for Hog Taxi, LLC in northwest Arkansas, work under the same policies and practices enforced by the company, and are subject to the same alleged violations of law during the same period of time. Drivers for Hog Taxi are all paid a commission per ride, regardless of the number of hours worked, and are subject to deductions such as a phone fee, a dispatch fee, and a lease fee for drivers who do not own their own vehicles. They all must sign the same contract and are considered and treated by Hog Taxi as independent contractors for purposes of determining wages, and they all perform essentially the same job.

In response to Defendants' argument that Plaintiff has not shown that the pay practice is unlawful, Mr. Harrison responds that, for purposes of conditional certification, he need not prove the merits of his FLSA claims at this time. The Court agrees that requiring Mr. Harrison at the certification stage to prove that other drivers did not receive minimum wage prematurely delves into the merits of Plaintiff's claims. *See Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 893 (N.D. Iowa 2008) (observing that during the initial "notice stage," when less information is before the court, plaintiffs need only demonstrate a "factual basis," a "colorable basis," or "substantial allegations" to show that they and potential collective-action members were subject to a company-wide decision,

plan, or policy that violated the FLSA). Whether or not Defendants actually violated the FLSA by failing to pay minimum wage is a subject that must be left for summary judgment or trial.

Turning now to the question of whether Mr. Harrison has sufficiently demonstrated that there are drivers interested in joining the litigation in significant numbers, such as to justify a collective action rather than several individual actions, the Court observes that other district courts in the Eighth Circuit and elsewhere are split as to whether plaintiffs must affirmatively demonstrate such interest. *See Helmert v. Butterball, LLC*, 2009 WL 5066759, at *4–*5 (E.D. Ark. Dec. 15, 2009) (collecting cases). This Court faced this issue in *Harris v. Express Courtier International* but did not decide it because the Court found that the plaintiff's affidavit would be sufficient to demonstrate the interest of other potential plaintiffs in joining the litigation if such a requirement applied. 2016 WL 5030371, at *4 (W.D. Ark. Sept. 19, 2016). Here, the potential class is much smaller than in *Harris* and Plaintiff's affidavit (Doc. 35-7) attests to less familiarity with the interest of potential class members.

The Court is persuaded, however, that such a requirement at this first stage of certification is not appropriate. The FLSA must be applied so as to facilitate its broad remedial purpose. As discussed above, the class certification process is intentionally bifurcated into this earlier stage of conditional certification, during which a lower standard applies, and a subsequent stage when a more rigorous bar must be met. To require that a plaintiff provide evidence that other potential plaintiffs were interested in joining the litigation even before notice can be sent would "essentially force plaintiffs or their attorneys to issue their own form of informal notice or to otherwise go out and solicit other

7

plaintiffs. This would undermine a court's ability to provide potential plaintiffs with a fair and accurate notice and would leave significant opportunity for misleading potential plaintiffs." *Helmert*, 2009 WL 5066759, at *5 (quoting *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007)). *See also Adams v. United Cerebral Palsy of Cent. Ark. Inc.*, 2017 WL 5659822, at *1 (E.D. Ark. Apr. 27, 2017). This Court agrees that at this stage, it is not appropriate to require a plaintiff to prove that there are other plaintiffs who would be willing to join the litigation.

As to the scope of the conditional class, Defendants challenge the inclusion of drivers who own their vehicles, rather than leasing them from Hog Taxi, because those drivers earn a higher percentage commission and do not have a lease fee deducted from their earnings. At this stage, however, it is sufficient for Mr. Harrison to establish that he and other drivers are paid according to the same policy and procedure—that is, that all drivers are paid by commission without regard to the hours worked and are subject to deductions. *See Middleton v. Hempstead Cnty., Ark.*, 2019 WL 3948106, at *3 (W.D. Ark. Aug. 21, 2019) (granting conditional certification of a group that was "not so broad as to appear to obviously encompass individuals who were not subject to the allegedly illegal policies and procedures"). As noted above, at this conditional certification stage, Mr. Harrison does not need to prove that other drivers, including drivers that are paid a different commission, received less than minimum wage. That fact-based inquiry is more appropriate on a subsequent motion for decertification, when more facts are available to the Court. The conditional class will therefore encompass all drivers.

Defendants' objection to the use of "employed" in the description of the class (Doc. 35-1), however, is well taken. Since a central element of the dispute will be whether the

drivers are employees or independent contractors of Defendants, which has not yet been adjudicated, the class definition and any reference to the class will refer to taxi drivers who "worked for" rather than "were employed by" Defendants.

Plaintiff's Motion for Conditional Certification is therefore **GRANTED** for the class of all taxi drivers who worked for Defendants at any time since February 7, 2016.

### III. NOTICE

#### A. Legal Standard

Once conditional certification has been granted, the Court must approve the notice to be sent to potential opt-in plaintiffs. The Court "ha[s] the discretion to manage the issuance of notice because the benefits derived from collective action dispute resolution 'depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" *Coates v. Dassault Falcon Jet Corp.*, 2017 WL 5598219, at *4 (E.D. Ark. Nov. 21, 2017) (quoting *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

#### B. Discussion

Several of Mr. Harrison's requests regarding notice were not objected to or Defendants' objections were accepted by the Plaintiff in his Reply (Doc. 40). Mr. Harrison's request to send notice to potential opt-in members via U.S. Mail with a 90-day period in which recipients can respond and a follow-up postcard after 30 days to those potential members who have not responded to the initial mail notice is granted. As agreed by the parties, paragraph 3 of the proposed Notice (Doc. 35-1) should be revised to reflect that trial has been set for August 24, 2020. Additionally, the Court finds that the reference

to settlement in the same paragraph does not downplay the seriousness of the proceedings, and the rest of paragraph 3 is therefore accepted as proposed.

Regarding Defendants' remaining objections to paragraph 6, the Court is not persuaded that either of them require that the proposed Notice be amended for accuracy. Defendants object that the statement that opt-in plaintiffs "will not be required to pay attorney's fees directly" is misleading because if the case settles and Plaintiff's counsel seeks a percentage of the fund for attorney's fees, the opt-in plaintiffs may not be made entirely whole from the remaining settlement funds. In no type of litigation is it guaranteed that a prevailing plaintiff will be made entirely whole, and the proposed Notice does not make such a representation to opt-in plaintiffs. In fact, the very next line in the proposed notice states that "Plaintiff's attorney will receive a part of any money judgment or settlement entered in favor of the class." This is sufficient to ensure that notice is accurate and not misleading to potential opt-in plaintiffs.

Additionally, Defendants raise the concern that the statement that opt-in plaintiffs "will not be required to pay attorney's fees directly" is misleading because the Eighth Circuit has held that the FLSA does not preclude a court from awarding costs to prevailing defendants under Rule 54(d)(1). *See Lochridge v. Lindsey Mgmt. Co., Inc.*, 824 F.3d 780, 782–783 (8th Cir. 2016). Costs under Rule 54(d)(1) explicitly do *not* include attorney's fees. Defendants assert that this sentence should nevertheless be revised because a layperson would understand it to mean that she would not be required to pay any *costs* associated with litigation. The Court finds that the possibility of an opt-in plaintiff becoming liable for costs associated with this litigation is too speculative to require that this language be revised to ensure informed consent. This risk of liability for costs

awarded under Rule 54(d)(1) is present in almost every type of litigation. Additionally, even if this case is resolved by a judgment in favor of Defendants and they seek costs, the Court has discretion whether and how much to award. The potential chilling effect of including language about potential liability for costs far outweighs the risk of opt-in plaintiffs becoming liable for such costs. Paragraph 6 of the proposed Notice is therefore approved without amendment.

Finally, Mr. Harrison's request to provide notice via email and enable opt-in plaintiffs to submit their consent forms electronically via RightSignature.com is approved. "Electronic communication is commonly utilized and is an appropriate, convenient, and efficient manner of communication with potential plaintiffs in FLSA actions." *Middleton*, 2019 WL 3948106, at *4 ("The Court finds it appropriate to allow one notice via a traditional communication method (U.S. mail) and one notice via an electronic communication."). In fact, district courts in Arkansas have already approved the same email notification and consent process requested here, with notice sent from the plaintiff's attorney and a consent email sent directly by RightSignature.com. *See McChesney v. Holtger Bros., Inc.*, 2019 WL 118408, at *6 (E.D. Ark. Jan. 7, 2019) (approving notice via U.S. Mail and "one email with notice of the action and another from www.Rightsignature.com with an electronic consent form"); *Hicks v. Lindsey Mgmt. Co., Inc.*, 2019 WL 542973 (E.D. Ark. Feb. 11, 2019) (same). Notice by the electronic procedure proposed by Mr. Harrison is therefore approved.

The Text of Electronic Transmissions proposed by Mr. Harrison (Doc. 35-3) should be revised as follows to reflect the parties' agreement that the language mirror that of the proposed Notice (Doc. 35-1). The email from Plaintiff's counsel should read as follows:

11

> Subject: Fair Labor Standards Act lawsuit against Hog Taxi, LLC, Melissa Reynolds and Timothy Reynolds
> Body: Please see attached notice regarding a Fair Labor Standards Act lawsuit against Hog Taxi, LLC, Melissa Reynolds and Timothy Reynolds. In a little while, you will receive an email from RightSignature.com, containing an electronic *Consent* form.

The email sent from RightSignature.com should read as follows:

> Subject: Consent to Join Lawsuit Against Hog Taxi, LLC, Melissa Reynolds and Timothy Reynolds
> Body: Please see attached Consent regarding a Fair Labor Standards Act lawsuit against Hog Taxi, LLC, Melissa Reynolds and Timothy Reynolds.

## IV. CONCLUSION

In light of the findings of the Court set forth above, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Conditional Certification of Collective Action, for Disclosure of Contact Information, and to Send Notices (Doc. 35) is **GRANTED** as follows:

(1) A class defined as "all taxi drivers who worked for Defendants at any time since February 7, 2016" is conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

(2) The proposed Notice (Doc. 35-1), Consent to Join (Doc. 35-2), Text of Electronic Transmissions (Doc. 35-3), Electronic Consent to Join (Doc. 35-4), and Second Notice (Doc. 35-5) are all approved as to form and content with the amendments noted in this Order, and Plaintiff is granted leave to send the revised documents to each putative class member in the manner contemplated by the Motion (Doc. 35).

(3) Defendants are ordered to produce to Plaintiff's counsel within 7 days of the entry of this Order, in malleable electronic format, the names and last known mailing addresses, telephone numbers, and any and all email addresses

associated with all those individuals who worked for Hog Taxi, LLC any time after February 7, 2016.

**IT IS SO ORDERED** on this 10th day of September, 2019.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE